GEORGE H. WOOSTER, RESPONDENT, v. DAVID KISCH AND LOUIS M. SIMSON, APPELLANTS.

*Liquidated damages — when a sum named in a contract is to be treated as liquidated damages, and not as a penalty.*

The plaintiff licensed the defendants to use a patented article, known as a " folding guide," to be employed in connection with sewing machines, upon the payment of fifty dollars for each guide so used. The guide is about three inches long and easily secreted. The contract provided that the party of the first part thereto, the plaintiff, or his assigns or agents, should have the right and privilege, and be permitted " at any reasonable time or hour to visit and inspect the establishment of the parties of the second part (the defendants), where said folding guides are, and inspect and count the same under penalty of one thousand dollars, which said sum is hereby fixed and stated as liquidated damages to be recovered against the said parties of the second part in case of refusal to permit such visits and inspections as aforesaid."

*Held,* that the sum named was to be treated as liquidated damages and not as a penalty.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict rendered at circuit, and also from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*Edmund Wetmore*, for the appellants.

*Thos. B. Browning*, for the respondent.

BRADY, J.:

This action was brought to recover the sum of $1,000, alleged to have been forfeited as liquidated damages for a breach of contract entered into between the parties. The plaintiff, by the agreement, licensed the defendants to use a patented article, known as a "folding guide," to be employed in connection with sewing machines and similar mechanism. The "guide" is about three or four inches long and is easily secreted. The defendants, among other things, agreed to permit the plaintiff at any reasonable time or hour to visit and inspect their establishment, and to inspect and count the "folding guides," and in case of their refusal to do so, covenanted to pay the plaintiff the sum of $1,000 as liquidated damages.

The contract on that subject provided as follows : " The said parties of the second part further covenant and agree that the said party of the first part, or his assigns, or his or their duly constituted agents, shall have the right and privilege, and shall be permitted, at any reasonable time or hour, to visit and inspect the establishment of the parties of the second part, where said folding guides are, and inspect and count the same, under penalty of one thousand dollars, which said sum is hereby fixed and stated as liquidated damages to be recovered against the said parties of the second part in case of refusal to permit such visits and inspections as aforesaid."

On the 17th of May, 1879, the plaintiff applied to the defendants, during business hours, to be allowed to visit and inspect their establishment, in accordance with the terms of the contract, but permission to enter the establishment was presently refused.

Upon the trial there was an issue with regard to the refusal of the defendants to allow the inspection, which was disposed of upon

conflicting evidence. The judge charged that if the plaintiff, at a reasonable time and in a reasonable manner, and for the purpose named in the agreement, made a demand, and satisfactorily proved that he did, and that the defendants refused, he was entitled to a verdict. There was no exception taken upon this branch of the case to the judge's charge, and the verdict of the jury was in favor of the plaintiff, thus establishing the fact that the plaintiff, at a reasonable time and in a reasonable manner, and for the purposes named in the agreement, asked permission to visit the defendants' establishment and to count their "folding guides," which was refused him. The judge also held that the license provided for the payment of $1,000 as liquidated damages, and not as penalty; and to this ruling there was an exception.

There was a request, also, on behalf of the defendants, to charge that the clause in controversy, namely, that which referred to the payment of liquidated damages, construed with reference to the rest of the contract and with the intent of the parties, as derived from the language of the instrument and the circumstances, provided a penalty, and that the plaintiff could only recover nominal damages in case of a breach. This request was refused and an exception was duly noted.

The question presented upon this appeal is whether, under the agreement, the sum named is to be regarded as liquidated damages or as a penalty, and in the determination of that problem as one of intention, it may be said that perhaps there is not much growing out of the facts and circumstances developed to guide us in arriving at a satisfactory conclusion, but yet enough. The question is not free from difficulty, owing to the variety of decisions relating to the subject, and which are well summed up in the remarks of EARL, J., in the case of Kemp et al. v. The Knickerbocker Ice Company, to be found at pages 57 and 58 of the 69th New York Reports, and which are as follows:

"The question whether a sum named in a contract to be paid for a failure to perform shall be regarded as stipulated damages or a penalty, has been frequently before the courts, and has given them much trouble. The cases cannot all be harmonized, and they furnish conspicuous examples of judicial efforts to make for parties wiser and more prudent contracts than they had made for them-

selves. Courts of law have, in some cases, assumed the functions of courts of equity, and have relieved parties, by forced and unnatural constructions, from stipulations highly penal. Where an amount stipulated as liquidated damages would be grossly in excess of the actual damages, they have leaned to hold it a penalty. Where the actual damages were uncertain and difficult of ascertainment, they have leaned to hold the stipulated amount to have been intended as liquidated damages. No form of words has been regarded as controlling, but the fundamental rule as thus announced is, that the construction of these stipulations depends in each case upon the intent of the parties, as evinced by the entire agreement construed in the light of the circumstances under which it was made." EARL, J., then groups a number of cases as illustrative of the views thus expressed.

In this case the circumstances are that the plaintiff was the owner of a patent "folding guide," which would seem to be very useful. It is small in size, as already stated, being not more than three or four inches long, and might therefore be secretly used. The compensation for a license to use one of these guides is fifty dollars; the cost of the use of twenty of them, therefore, would amount to $1,000. The apprehended secret employment of the "guides" no doubt led to the determination on the part of the plaintiff to secure by contract indemnity for any abuse of his rights as a patentee, and to secure it in such a way that there could be no doubt about the form and effect of the security, and hence provided for the right to inspect the defendants' premises, as one of his licensees, and the "guides" employed by him. The plaintiff, denied the right of inspection and examination, would have no means of immediately ascertaining whether there was a violation of the agreement and of his rights or not. If he proceeded against the defendants at all it would or might necessarily be upon belief only, his action not resting upon any information with regard to the subject. The defendants might, as they did in this instance, unreasonably, and therefore unjustly, decline to allow an inspection of their premises, and of the "guide" or "guides" employed, and thus not only prevent the plaintiff from obtaining in that way the necessary and reliable information to enable him to assert his rights and to punish the defendants for a violation of their contract and of his privi-

leges, but subject him to the loss occasioned by the unwarranted use of guides not paid for.

These results must be supposed to have been within the comprehension of the defendants themselves at the time that the contract was made, and they must have fully understood, therefore, the importance of an absolute provision for the protection of the plaintiff's rights, which, as we have already seen, could be easily invaded in consequence of the character of the article patented. The refusal of the defendant Kirch to allow the inspection demanded by the plaintiff, and asking that it be deferred for a quarter or half an hour, would seem to indicate that something injurious to the plaintiff's rights was in progress, and that the time mentioned was desired for the purpose of removing the evidence thereof. It is certainly a very suspicious circumstance, in view of the finding of the jury that the request was not at once granted. This circumstance is referred to as corroborative of the ease with which a licensee might violate his contract, and upon short notice of a contemplated inspection which would disclose the violation, hastily suppress all evidence of it, and hence the necessity not only for the enforcement of a rigorous observance of the contract but of the provision of liquidated damages for its violation. It may be said, also, that damages in such a case must be regarded as uncertain and of a character not to be estimated except by conjecture, because of the inability of the plaintiff to obtain by actual observation and examination the necessary information to enable him to show what the damages were.

This case bears analogy to that of *Bagley* v. *Peddie* (reported in 16 N. Y., 469). That action was to recover $3,000 as liquidated damages. It appeared that none of the covenants were for the payment of money or for the doing or committing of any act. The damages resulting from it could not be computed by the data furnished by the instrument itself, but the damages from any breach were uncertain and required evidence *aliunde* the instrument to establish their amount. One of the covenants was not to reveal the secrets of the business in which the principal obligor was to be employed, or any invention or improvement that might be made by his employer, the obligee, and it was held that a breach of this covenant involved damages so uncertain and difficult to be ascertained that the sum named in the bond would be deemed not a

penalty but liquidated damages, although the damages resulting from the actual breach might be readily determined by a jury.

The case in hand presents the same elements as the one thus cited, and it seems should be governed by the principles enunciated in that case, which is one of those referred to by Justice EARL.

In the light of all the facts and circumstances, the character of the article licensed, the necessity for protection to the plaintiff and the ease with which his rights might be invaded and violated, lead to the conclusion that it was the intention of the parties that the sum named should be regarded as liquidated damages, and not as a penalty.

There is no reason why this view should not be entertained.

The doctrines which the courts have promulgated to control actions of this character have resulted, as suggested by Judge EARL, from a disposition to save people from seemingly improvident contracts, and although doubtless, in many cases, they have exercised a benign influence, are nevertheless extremely questionable in their general application.

It would probably be shown, if the matter could be properly investigated, on proof as to intention, that the parties intended in all cases that the sum named should be paid for a violation of the agreement. Contracting parties are not educated to an understanding of the rules prevailing in regard to the construction of an agreement, such as made by the parties hereto, which these doctrines have established; but when advised of them, as they may be, will doubtless, in many instances, take the chances of a violation of the agreement which otherwise would be strictly performed.

For the reasons assigned the judgment should be affirmed, with costs.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment affirmed, with costs.